60 F.3d 720
 In re BIRMINGHAM REVERSE DISCRIMINATION EMPLOYMENT LITIGATION
James A. BENNETT, Plaintiff,
Floyd E. Click; James D. Morgan; Joel Alan Day; Gene E.
Northington; Vincent Joseph Vella; and Lane L.
Denard, Plaintiffs-Appellants, Cross Appellees,
v.
Richard ARRINGTON, Jr., as Mayor of the City of Birmingham;
City of Birmingham; James B. Johnson; Henry P. Johnston;
and Hiram Y. McKinney, as Members of the Jefferson County
Personnel Board; Joseph W. Curtin, as Director of the
Jefferson County Personnel Board; and Jefferson County
Personnel Board, Defendants-Appellees,
John W. Martin, Major Florence, Ida McGruder, Sam Coar,
Eugene Thomas, Charles Howard,
Defendants-Intervenors-Appellees-Cross Appellants,
United States of America, Defendant-Intervenor-Appellee.
BIRMINGHAM ASSOCIATION OF CITY EMPLOYEES, an unincorporated
labor association, and Kenneth O. Ware,
Plaintiffs-Appellants, Cross Appellees,
Gerald L. Johnson; Phillip H. Whitley; David H. Woodall;
Danny R. Laughlin; Marshall G. Whitson; Dudley
L. Greenway, Plaintiffs,
v.
Richard ARRINGTON, Jr., as Mayor of the City of Birmingham;
City of Birmingham; James B. Johnson; Henry P. Johnston;
and Hiram Y. McKinney, as Members of the Jefferson County
Personnel Board; Joseph W. Curtin, as Director of the
Jefferson County Personnel Board; Jefferson County
Personnel Board; and the United States of America,
Defendants-Appellees,
John W. Martin, Major Florence, Ida McGruder, Sam Coar, Wanda Thomas, Eugene Thomas and Charles Howard, Defendants - Intervenors - Appellees -
Cross Appellants.
Robert K. WILKS; Carlice E. Payne; Ronnie J. Chambers;
John E. Garvich, Jr., James W. Henson; Robert
Bruce Millsap, Plaintiffs-Appellants,
Cross Appellees,
United States of America, Plaintiff-Intervenor,
Howard E. Pope, Charles E. Carlin, Plaintiffs-Intervenors-Appellants,
v.
Henry P. JOHNSTON, Defendant,
John W. Martin, Major Florence, Ida McGruder, Sam Coar,
Eugene Thomas and Charles Howard,
Defendants-Intervenors-Appellees-Cross Appellants,
Wanda Thomas, Defendant-Intervenor.
 No. 92-6778.
 United States Court of Appeals,
Eleventh Circuit.
 Dec. 14, 1994.
 
 Raymond P. Fitzpatrick, Jr., Whiteside & Fitzpatrick, Birmingham, AL, for appellants.
 Robert D. Joffe, Cravath, Swaine & Moore, New York City, for Martin, Florence, McGruder, Coar, Thomas & Howard.
 James P. Alexander, Anne R. Yuengert, James Walker May, Bradley, Arant, Rose & White, Birmingham, AL, for Arrington & City of Birmingham.
 Sharon R. Vinick, Richard T. Seymour, Lawyers' Committee For Civil Rights, Washington, DC, for Martin, et al.
 Rebecca K. Troth, Dept. of Justice, Appellate Section, Civil Rights Div., Washington, DC, for U.S. as amicus curiae.
 LaVeeda Morgan Battle, Gorham & Waldrep, P.C., Birmingham, AL, for Personnel Bd. of Jefferson County, AL & Bd. Members.
 Appeals from the United States District Court for the Northern District of Alabama (Nos. CV84-P-00903-S, CV-82-P-00850-S, CV82-P-01852-S and CV83-P-02116-S); Sam C. Pointer, Judge.
 SUGGESTIONS OF REHEARING EN BANC
 (Opinion May 4, 1994, 11th Cir., 20 F.3d 1525).
 Before TJOFLAT, Chief Judge, KRAVITCH, HATCHETT, ANDERSON, EDMONDSON, COX, BIRCH, DUBINA, BLACK, CARNES and BARKETT, Circuit Judges.
 PER CURIAM:
 
 
 1
 The Court having been polled at the request of one of the members of the Court and a majority of the Circuit Judges who are in regular active service not having voted in favor of it (Rule 35, Federal Rules of Appellate Procedure; Eleventh Circuit Rule 35-5), the Suggestion(s) of Rehearing En Banc are DENIED.
 
 HATCHETT, Circuit Judge, dissenting:
 
 2
 I respectfully dissent from the court's failure to grant en banc rehearing for this case. This case raises important issues meriting en banc review. The en banc worthy issues that the court has declined to rehear include:
 
 
 3
 (1) What factual changes must occur before a district court is justified in modifying a consent decree involving racial discrimination, where the discrimination results from the effects of past discrimination?
 
 
 4
 (2) Should consent decrees ending litigation be treated the same as voluntary, race conscious, local government affirmative action programs?
 
 
 5
 (3) What weight must a district court give to statistical disparities between the proportion of minorities a public employer hires and the proportion of minorities willing and able to do the work?
 
 
 6
 (4) To what extent are long term goals allowable in consent decrees between public bodies and minority citizens?
 
 
 7
 (5) Who are "innocents" in terms of a consent decree that provides a remedy for past and present racial discrimination?(6) Do "innocents" have standing to attack the provisions of a consent decree involving remedies for public body racial discrimination?
 
 
 8
 (7) May a consent decree in a public body lawsuit set an annual affirmative action goal greater than the proportion of minorities in the qualified labor pool?
 
 
 9
 (8) May intervenors require the plaintiffs to show, five or ten years after a consent decree has been entered, that the plaintiff class still suffers the effects of racial discrimination?
 
 
 10
 (9) May intervenors challenge a consent decree ordering affirmative action for minorities, five to ten years later, based upon current law?
 
 
 11
 To fully resolve these issues I believe en banc review is necessary. In addition, I believe the court erred in the following respects:
 
 
 12
 1. The record evidence contradicts the panel's characterization of the fifty percent annual goals as a rigid, inflexible quota.
 
 
 13
 The panel ignored both the flexibility built into the consent decree and the City's actual promotional practices under the decree. First, the decree does not require that any positions be set aside for black or white employees. Instead, for the position of fire lieutenant, the decree provides that subject to the availability of qualified black applicants, the City shall establish and attempt to achieve an annual goal of making promotional appointments to vacancies in permanent full-time positions in the classified service of black applicants at the rate of fifty percent. That goal was eliminated once the long-term goal of the decree was met: that is, once twenty-eight percent of the fire lieutenants were black. While the goal was in place, the decree provided that it did not require the City to hire unnecessary personnel or to hire, transfer, or promote a person who was not qualified. The long-term goal has been met. The panel should not have considered the long-term goal.
 
 
 14
 Second, the implementation of the decree did not rigidly result in alternate promotions. Perhaps the clearest indication of operation of the interim goal is that during the operation of the consent decrees, approximately sixty percent of the fire lieutenant promotions were awarded to white employees while forty percent were awarded to black employees. This fact confirms that the goals were not inflexible and rigid quotas.
 
 
 15
 2. In concluding that the city's consent decree unnecessary trammels the rights of white firefighters in violation of Title VII, the panel erroneously assumed that white firefighters are entitled to promotions based upon current unlawful selection procedures.
 
 
 16
 The panel held "that the city's affirmative action plan violates Title VII because it unnecessarily trammels the rights of non-black firefighters by establishing a rigid, arbitrarily selected quota of fifty percent annual black promotions to fire lieutenant." The panel opinion does not suggest that evidence in the record indicates the white intervenors would have been promoted if the City had used lawful selection procedures. Indeed, the district court found the intervening white firefighters had not demonstrated that any of them were, at the time of the promotions, demonstrably better qualified than any of the blacks certified from the same eligible register based on the result of a valid job-related selection procedure. In re. Birmingham Reverse Discrimination Employment Litigation, 39 Fair Empl.Prac.Cas. (BNA) 1431, 1444 p 97, 1985 WL 56690 (N.D.Ala.1985), rev'd on other grounds, 833 F.2d 1492 (11th Cir.1987), affirmed sub nom. Martin v. Wilks, 490 U.S. 755, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989). The panel's holding that the impact of this affirmative action system on the white intervenors constituted unnecessary trammeling on their rights overlooks the fact, which the district court recognized, that the white firefighters have no entitlement to the way things would have been absent the consent decrees because the selection procedures the board and City used discriminated unlawfully against black firefighters.
 
 
 17
 Moreover, the consent decree did not prevent the promotion of white firefighters, but at worst only delayed the promotions--promotions to which they had no true entitlement. The average delay in the promotion of white firefighters approximated seven and one-half months. Nevertheless, the panel reversed the district court's findings and held that the delay unnecessarily trammeled the rights of white firefighters. The precedent of this circuit and of the Supreme Court does not condone such a view of the import of promotional delays. See United States v. Paradise, 480 U.S. 149, 183, 107 S.Ct. 1053, 1072-73, 94 L.Ed.2d 203 (1987) (plurality opinion) ("promotional goal only postpones the promotion of qualified whites.... Denial of a future employment opportunity is not as intrusive as loss of an existing job and plainly postponement imposes a lesser burden still."); Howard v. McLucas, 871 F.2d 1000, 1009 (11th Cir.1989) ("the [promotional] relief does not prevent white employees from being promoted.... White employees are at most delayed in receiving a promotion to a limited number of specified positions").
 
 
 18
 The panel also improperly speculated as to the possible harm the white firefighters would experience. For instance, the panel conjectured that the "promotion figure no doubt impacted the earnings of appellants who are likely heavily dependent on wages for their day-to-day living.... The failure to be promoted or even the delay in receiving a promotion also likely impacts earnings long into the future under whatever retirement program the city provides for BFRS employees." The panel substituted conjecture for the findings of the district court.
 
 
 19
 3. The panel's holding that accelerated race conscious relief is unconstitutional unless tied to minority representation in the labor pool clashes with Supreme Court precedent.
 
 
 20
 The panel held that the "arbitrarily selected fifty percent figure for annual black promotions to fire lieutenant unnecessarily trammels the rights of non-black firefighters" because it is unrelated to the percentage of black people in the relevant labor pool. The Supreme Court, however, has encouraged accelerated promotional remedies unrelated to the percentage of minorities in the underlying labor pools in order to counter the effects of egregious past discrimination. See Paradise, 480 U.S. at 179-82, 107 S.Ct. at 1070-72 (plurality opinion); United Steelworkers of America v. Weber, 443 U.S. 193, 208-09, 99 S.Ct. 2721, 2729-30, 61 L.Ed.2d 480 (1979). The panel's assertion that this is not a case like Paradise where the district court ordered a remedy to combat an egregious refusal to ... end discriminatory practices" is a distinction without a substantive difference. Attaining a racial balance through accelerated hiring is not unconstitutional; the law only prohibits maintaining such a balance. Weber, 443 U.S. at 209, 99 S.Ct. at 2730 (approving an affirmative action plan that "is not intended to maintain racial balance; but simply to eliminate a manifest racial imbalance"); Johnson, 480 U.S. at 639, 107 S.Ct. at 1455 (upholding plan intended to "attain a balanced work force, not to maintain one").
 
 
 21
 4. An affirmative action plan need not be the least intrusive means to remedy prior discrimination.
 
 
 22
 An affirmative action plan need not be the absolute minimum, as the panel implies, In re Birmingham Reverse Discrimination, 20 F.3d at 1549 ("the impact of the decree on non-black firefighters in this case was not relatively diffuse, but was instead quite pointed"), to make a difference in redressing past discrimination. Paradise, 480 U.S. at 184, 107 S.Ct. at 1073 (plurality opinion) (remedial plans not limited to least intrusive means of implementation); see also Fullilove v. Klutznick, 448 U.S. 448, 508, 100 S.Ct. 2758, 2790, 65 L.Ed.2d 902 (1980) ("this Court has not required remedial plans to be limited to least restrictive means of implementation"). Innocents may properly bear some of the burden of redressing past discrimination. Wygant v. Jackson Bd. of Education, 476 U.S. 267, 280-81, 106 S.Ct. 1842, 1849-51, 90 L.Ed.2d 260 (1986).
 
 CONCLUSION
 
 23
 Based on the significance of these issues, the full court should have granted en banc consideration.